**Michael Lee DAVIS, Appellant,**

v.

**DISTRICT OF COLUMBIA and Dwight Bynum, Corporal, Central Facility, Appellees,**

**United States of America, Intervenor for Appellee.**

No. 97–7043.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 1, 1998.

Decided Oct. 27, 1998.

Catherine E. Lhamon, argued the cause as amicus curiae for appellant. With her on the briefs were Steven H. Goldblatt, appointed by the court, and Mary L. Clark.

Michael L. Davis, appearing pro se, was on the brief for appellant.

Thomas M. Fisher argued the cause for appellees. With him on the brief were John M. Ferren, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, Lutz Alexander Prager, Assistant Deputy Corporation Counsel, and Mary L. Wilson, Assistant Corporation Counsel. Jo Anne Robinson, Principal Deputy Corporation Counsel, entered an appearance.

Frank W. Hunger, Assistant Attorney General, U.S. Department of Justice, Wilma A. Lewis, U.S. Attorney, Barbara L. Herwig and Deborah Ruth Kant, Attorneys, U.S. Department of Justice, were on the brief for intervenor United States of America.

Before: WALD, WILLIAMS and TATEL, Circuit Judges.

WILLIAMS, Circuit Judge:

Michael Lee Davis, an inmate of D.C. Central Prison at Lorton, brought this action under 42 U.S.C. § 1983. He alleged that one Corporal Bynum, an official of the District of Columbia Department of Corrections, and the District of Columbia itself, violated his constitutional right to privacy. According to his complaint, Bynum broke the seal on the plaintiff's medical files and disclosed their contents to others without the plaintiff's consent, allegedly saying that Davis was dying of HIV. In his complaint, Davis alleged resulting emotional and mental distress, but no other injury. He sought compensatory and punitive damages as well as declaratory relief. Pursuant to 28 U.S.C. § 1915A, the district court dismissed the complaint sua sponte, for failure to state a claim on which relief could be granted. In doing so it relied

on 42 U.S.C. § 1997e(e), § 803(d) of the Prison Litigation Reform Act ("PLRA"), enacted as Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321 (1996). That provision, "Limitation on Recovery," states:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

Davis appeals from the district court's dismissal, arguing primarily that § 1997e(e) violates his right to equal protection and unduly burdens his Fifth Amendment right of access to the courts. He also says that the district court erred in dismissing his complaint sua sponte, without granting him leave to amend his complaint to allege physical injuries. We appointed amicus curiae to argue these issues on behalf of plaintiff. We affirm.

### I. Constitutionality of § 1997e(e)

Davis contends that § 1997e(e) violates his right to equal protection because its prohibition on recovery for emotional or mental injury absent a prior showing of physical injury substantially burdens his ability to vindicate his right to privacy. Thus he invokes the familiar taxonomy in which classifications that disadvantage a suspect class or impinge on the exercise of a fundamental right are subject to strict scrutiny, while classifications that do neither are subject only to review for rationality. *Plyler v. Doe,* 457 U.S. 202, 216–17, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Here the central claim is that Davis's right to privacy is a "fundamental right" within the meaning of the above concept, and that it was unconstitutionally invaded when Corporal Bynum broke the seal on his file and disclosed his medical condition to outsiders. We will assume as much for purposes of argument. Because § 1997e(e) does not sufficiently impinge on the hypothetical right, it does not deprive Davis of equal protection even under that assumption.

In addressing the constitutional issue, the parties offer sharply contrasting readings of the statute. Davis claims that it cuts a wide swath, eliminating even actions for injunctive or declaratory relief where plaintiff alleges emotional injury without prior physical injury (thereby enhancing the likelihood of its being unconstitutional). The District, plus the United States as intervenor (pursuant to 28 U.S.C. § 2403), argue for a narrow reading, saying that § 1997e(e) is merely a limitation on damages, thus preserving actions for injunctive and declaratory relief based on emotional injury. We agree with the District and the United States that the provision has little or no bearing on declaratory or injunctive actions.

First, the text of the statute refers to injuries *"suffered,"* the past tense suggesting the statute's inapplicability to claims based on the threat of prospective injury, as would be the case for claims for declaratory or injunctive relief. But more critical is the fact that suits for declaratory and injunctive relief against the threatened invasion of a constitutional right do not ordinarily require proof of any injury other than the threatened constitutional deprivation itself. As we have held previously, there is a " 'presumed availability of federal equitable relief against threatened invasions of constitutional interests.' " *Hubbard v. EPA*, 809 F.2d 1, 11 (D.C.Cir.1986) (quoting *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 404, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Harlan, J., concurring)). Although a plaintiff seeking equitable relief must show a threat of substantial and immediate irreparable injury, see *O'Shea v. Littleton*, 414 U.S. 488, 502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), a prospective violation of a constitutional right constitutes irreparable injury for these purposes. *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir.1987). Thus, we agree with the District that the statute does not materially thwart actions for injunctions or declaratory judgments, for the simple reason that a plaintiff's ability to claim such relief is normally independent of any injury other than the threatened loss of the constitutional right. This reading accords with that of the Seventh Circuit in *Zehner v. Trigg*, 133 F.3d 459 (7th Cir.1997), which construed

§ 1997e(e) as limiting only the damage remedy, leaving injunctive relief in place. *Id.* at 461–64.

Concluding that § 1997e(e) has no restrictive effect on claims for declaratory or injunctive relief, we next turn to whether its limitation on damages actions sufficiently impinges on the alleged privacy right, assuming it to exist and qualify as fundamental within the meaning of equal protection doctrine. It is clear at the outset that the Constitution does not mandate a damages remedy for all injuries suffered as a result of a constitutional violation. In *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), for example, Congress had provided an elaborate set of remedies for civil service employees, remedies covering the constitutional violations alleged but not including compensation for consequential damages, specifically attorneys' fees and "emotional and dignitary harms." *Id.* at 372 n. 9, 103 S.Ct. 2404. Despite this deficiency the Court regarded Congress's scheme as a "special factor[ ] counseling hesitation," and accordingly declined to infer a damages remedy under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The Court observed that the question of judicial creation of a remedy could "obviously" not "be answered by simply noting that existing remedies do not provide complete relief for the plaintiff." 462 U.S. at 388, 103 S.Ct. 2404.

Similarly, in *Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), the Court declined to imply a *Bivens* remedy for people who were improperly denied Social Security disability benefits, allegedly as a result of due process violations. It noted that "exactly as in *Bush*, Congress has failed to provide for 'complete relief': respondents have not been given a remedy in damages for emotional distress or for other hardships suffered because of delays in their receipt of Social Security benefits." *Id.* at 425, 108 S.Ct. 2460. The Court acknowledged that "a *Bivens* remedy would obviously offer the prospect of relief for injuries that must now go unredressed." *Id.* But it

distinguished the cases where *Bivens* actions were implied as ones where "there were no 'special factors counselling hesitation in the absence of affirmative action by Congress,' no explicit statutory prohibition against the relief sought, and no exclusive statutory alternative remedy." *Id.* at 421, 108 S.Ct. 2460. As in *Bush* it found the congressional provision of remedies a "special factor" counseling the judiciary not to create remedies. *Id.* at 428, 108 S.Ct. 2460. See also *Spagnola v. Mathis,* 859 F.2d 223 (D.C.Cir. 1988) (holding that "special factors" preclude creation of *Bivens* remedy for civil service employees and applicants who advance constitutional challenges to federal personnel actions).

■ Of course a constitutionally permissible curtailment of remedies might still constitute enough of an impingement on the assumed fundamental right to trigger strict scrutiny. But here the remaining remedies are ample. Persons who are subjected to an on-going threat of unconstitutional conduct may sue for injunctive or declaratory relief, and of course ones with a qualifying physical injury may sue for damages. Davis, to be sure, is evidently not such a person. But for legislation to impinge on a right sufficiently to require strict scrutiny, it must "directly and substantially" interfere with the right. *Lyng v. Castillo,* 477 U.S. 635, 638, 106 S.Ct. 2727, 91 L.Ed.2d 527 (1986) (household definitions for purposes of food stamp eligibility do not sufficiently impinge on rights of association to require strict scrutiny). Cf. *Zehner,* 133 F.3d at 462 ("the Constitution does not demand an individually effective remedy for every constitutional violation."). Here we do not see that the preclusion of backward-looking relief in cases where the wrong causes only mental and emotional injury, and there is no prior physical injury, could be said to "directly and substantially" interfere with the exercise of the hypothetical right. Any effect of § 1997e(e) on the ability and willingness of prisoners to exercise any constitutional right to privacy in information about themselves is very likely to be marginal and incidental. That Davis is not among the plaintiffs whose claims survive speaks more to the slightness of his injury than to any great severity in the congressional curtailment of remedies. The impingement on the hypothesized fundamental right could be found severe enough to trigger strict scrutiny only under a view of impingement so sweeping as to imperil much legislation.

■ Having rejected strict scrutiny, we review § 1997e(e) under the rational basis standard, inquiring whether it is rationally related to a legitimate government interest. *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). The legitimacy of the interest in cutting back meritless prisoner litigation appears obvious, as we have already recognized. *Tucker v. Branker,* 142 F.3d 1294, 1300 (D.C.Cir.1998). In the course of the PLRA's enactment legislators made frequent references to the scope of such litigation. Senator Dole, who sponsored the bill in the Senate, noted that the number of due process and cruel and unusual punishment claims filed by prisoners each year grew from 6,600 in 1975 to over 39,000 in 1994. 141 Cong. Rec. § 14413 (daily ed. Sept. 27, 1995). Prisoners' litigiousness has greatly exceeded that of the general population. In the state of Arizona, for example, the 20,000 inmates filed almost as many lawsuits in 1994 as the state's 3.5 million other residents. *Id.*

Plaintiff argues, however, that § 1997e(e) fails rational basis review because it singles out prisoners without regard to the likely merit of their claims. But in *Tucker* we noted that prisoners face unusual incentives: there are far fewer competing demands on their time than on the time of the general population (in the language of economics, the opportunity costs of litigation are lower). The risk of their using the time to file frivolous lawsuits is correspondingly higher. 142 F.3d at 1300–01. Just as there we found that these special incentives and the poor success rate of their lawsuits justified a special filing fee rule for prisoners, the same factors establish the rational basis for curtailment of prisoner suits that depend entirely on claims of emotional or mental injury.

■ In addition to his equal protection claim, Davis argues that § 1997e(e) denies prisoners their right to meaningful access to courts, in violation of the Fifth Amendment.

That prison inmates have a constitutional right of access to courts is well-established. *Lewis v. Casey*, 518 U.S. 343, 350–51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Tucker v. Branker*, 142 F.3d at 1297. But the right is only to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis*, 518 U.S. at 351, 116 S.Ct. 2174 (quoting *Bounds*, 430 U.S. at 825, 97 S.Ct. 1491). A congressional adjustment of remedies which satisfies generally applicable constitutional limitations, should not, simply because it applies to prisoners, turn into an invalid restriction of the "right of access" to courts. The "right of access" cases protect prisoners from being unduly hampered in litigation by their incarceration; they provide no doctrinal support for affording them heightened judicial scrutiny over congressional power to define remedies.

## II. The Propriety of the District Court's Sua Sponte Dismissal

■ Plaintiff also asserts that the district court failed to construe his pro se complaint liberally, and as a result improperly dismissed his complaint sua sponte with prejudice under 28 U.S.C. § 1915A. Section 1915A requires the district court to dismiss a case sua sponte if, in reviewing the complaint before the defendant answers, the court finds that the complaint fails to state a claim upon which relief could be granted. 28 U.S.C. § 1915A(b)(1). We review such dismissals *de novo*. *Taylor v. FDIC*, 132 F.3d 753, 761 (D.C.Cir.1997). Here as a matter of law plaintiff cannot prevail on any of his claims— his conventional damage claim, his claim for punitive damages, or his claim to declaratory relief.

■ The claim to compensatory damages is directly barred by § 1997e(e), as Davis has alleged no compensable injury. *Carey v. Piphus*, 435 U.S. 247, 255, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (damages other than nominal damages require compensable injury). Nor do we think the punitive claim can survive. Amicus argues that because punitive damages are awarded to punish the

tortfeasor rather than to compensate the victim, they are not embraced by § 1997e(e). But § 1997e(e) draws no such distinction. It simply prevents suits "for" mental injury without prior physical injury. As the purposes of compensatory awards themselves are multifaceted (including, for example, deterrence), it can hardly be the case that, when a suit alleges only mental or emotional injury, the presence of additional purposes makes a suit not "for" the injuries alleged. Further, much if not all of Congress's evident intent would be thwarted if prisoners could surmount § 1997e(e) simply by adding a claim for punitive damages and an assertion that the defendant acted maliciously.

■ As for plaintiff's claim for declaratory relief, it lacks what is necessary for standing to assert any claim to forward-looking relief—some allegation from which one might infer a "real and immediate" threat that the alleged wrong will recur. *Haase v. Sessions*, 835 F.2d 902, 911 (D.C.Cir.1987) (finding the requirement as applicable to declaratory judgment as to injunctive actions). Not only does Davis fail to allege any District policy leading to Bynum's alleged conduct, but his own brief explicitly claims that the conduct violated District rules. And while Davis has claimed that the District failed to properly train and supervise Bynum, it is quite a leap from any such deficiency to a finding that Davis is likely again to be subject to the same conduct. Nor does Davis suggest any further reason to expect a repetition by the alleged perpetrator here, Bynum. Indeed, his brief argues that Bynum's motive was to disrupt the relationship between Davis and his fiancee (the person to whom Bynum allegedly made the disclosure), a purpose which, the District points out, is now completely exhausted.

■ Amicus contends that the plaintiff's allegations also set forth sufficient facts to show a violation of his rights under the public entity provision of the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794, even though the plaintiff never specifically mentioned those provisions. Amicus's theory here disregards the impact of § 1997e(e). Assuming the alleged facts would be suffi-

cient to state a claim under those provisions, § 1997e(e) precludes claims for emotional injury without any prior physical injury, regardless of the statutory or constitutional basis of the legal wrong. And to the extent that any declaratory relief might be available under these provisions, again his claim runs aground on the lack of any serious threat of repetition.

At oral argument the issue of a possible claim for nominal damages arose—plaintiff's prayer for relief at the district court was exclusively for compensatory and punitive damages, and for declaratory relief. The violation of certain constitutional rights, characterized by the Supreme Court as "absolute," *Carey*, 435 U.S. at 266, 98 S.Ct. 1042, will support a claim for nominal damages without any showing of actual injury. *Id.* at 266–67, 98 S.Ct. 1042. The interpretive issue posed by § 1997e(e) is clearly harder here than for punitive damages. The theory of such a lawsuit itself dispenses with any need for injury other than the deprivation of the right itself (as we noted in the case of suits for injunctive or declaratory relief), and prisoners are presumably a good deal less likely to embark on a lawsuit if there is no prospect of a pecuniary reward. But Davis never sought nominal damages. Nor do his or amicus's submissions to this court ever mention a claim to nominal relief. We would thus confront the issue only if we strained to find inferences that are not available on the face of the complaint or in the briefs submitted to this Court, and we think such straining inappropriate. *Coates v. Illinois State Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir.1977). Accordingly, giving the plaintiff the benefit of all the inferences to which he is entitled, we still find nothing in his complaint that can survive the pleading stage.

Davis also contends that the district court erred when it sua sponte dismissed his complaint with prejudice, giving him no chance to amend his complaint. He argues that if given such a chance he could allege facts that could remove his claims from the bar of § 1997e(e). Specifically, he relies on an affidavit by a psychiatrist asserting that Davis experienced weight loss, appetite loss, and insomnia after the disclosure of his medical status, which he says would qualify as "physical injury" under § 1997e(e). But adding these assertions would not help his case. Both the explicit requirement of § 1997e(e) that the physical injury be "prior," and the statutory purpose of discouraging frivolous suits, preclude reliance on the somatic manifestations of emotional distress Davis alleges. Cf. *Terrafranca v. Virgin Atlantic Airways, Ltd.*, 151 F.3d 108 (3rd Cir.1998) (holding that physical manifestation of emotional injury was not "bodily injury" under Article 17 of the Warsaw Convention); *Plaisance v. Texaco, Inc.*, 937 F.2d 1004, 1009 (5th Cir.1991) (noting that for negligent infliction of emotional distress, physical injury or impact rule permits recovery for emotional injury only if there is some physical contact). Under our cases, where a trial court has dismissed a claim sua sponte under Rule 12(b)(6) without affording plaintiff an opportunity to replead, a remand is appropriate unless " 'the claimant cannot possibly win relief.' " *Baker v. Director, United States Parole Comm'n*, 916 F.2d 725, 726 (D.C.Cir. 1990) (per curiam) (quoting *Omar v. Sea-Land Serv.*, 813 F.2d 986, 991 (9th Cir.1987)). This can be true either because, as in *Baker*, the facts alleged affirmatively preclude relief, or because, even though plaintiff makes clear that he has facts to *add* to his complaint, he would not have a claim upon which relief could be granted even with those facts. Because § 1997e(e) precludes plaintiff's recovery here even with the facts he proposes to add, remand would be futile.

### III. Conclusion

In short, we hold that § 1997e(e) did not violate the plaintiff's right to equal protection or his right of access to courts. We affirm the District Court's sua sponte dismissal of the complaint with prejudice.

*So ordered.*