**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1094
_____

SPECTOR GADON & ROSEN, P.C.

v.

ROBERT M. FISHMAN

(D.C. No. 2-13-cv-02691)

ROBERT M. FISHMAN

v.

ALAN B. EPSTEIN; SPECTOR GADON & ROSEN, P.C.

(D.C. No. 2-13-cv-05198)

Robert M. Fishman,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Nos. 2-13-cv-02691 & 2-13-cv-05198)
District Judge:  Honorable Joel H. Slomsky

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 3, 2016

Before:  CHAGARES, HARDIMAN, and SCIRICA, Circuit Judges.

(Filed: November 10, 2016)

_____

OPINION[*]
_____

CHAGARES, Circuit Judge.

Plaintiff Robert M. Fishman appeals from the District Court's order granting

judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) in favor of

Alan B. Epstein and Spector, Gadon & Rosen P.C. ("Spector Gadon"). Fishman also

appeals the District Court's denial of his motion for reconsideration. For the following

reasons, we will affirm the District Court's orders.

I.

We write solely for the parties and therefore recite only the facts necessary to our

disposition. Robert M. Fishman was employed as Chief Executive Officer by United

American Indemnity, Ltd. ("UAI") until his termination in May 2007. After his

termination, Fishman brought a breach of contract claim against UAI, retaining attorney

Alan B. Epstein and the law firm Spector Gadon to represent him in connection with his

claim. Because Fishman's employment agreement with UAI contained an arbitration

clause, Fishman's case proceeded to binding arbitration before the Honorable James R.

Melinson.

Before the arbitration and during discovery, Epstein entered into settlement

negotiations with UAI on Fishman's behalf. On July 17, 2009, the parties negotiated

several potential terms of settlement. For instance, the parties proposed that Fishman

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

would testify in a separate litigation – the Keane litigation – in favor of UAI's position in exchange for a $1,000,000 payout to Fishman. Although Fishman was not present at the July 17 meeting, Epstein called him to convey the proposed settlement terms.

Epstein and UAI continued to engage in settlement discussions by telephone and email over the next few months. On October 12, 2009, the parties again met to discuss additional terms relating to the settlement. Fishman, however, refused to accept the additional terms, and no settlement was reached. On November 29, 2009, after UAI settled the Keane litigation (thus obviating the need for Fishman's testimony), UAI informed Fishman that it was withdrawing its $1,000,000 settlement offer.

In response to UAI's withdrawal of its settlement offer, Epstein filed a motion to enforce the settlement agreement. Judge Melinson denied the motion, ruling that there had been no enforceable agreement. Judge Melinson based this conclusion, in part, on his determination that any ultimate settlement would have required ratification from the UAI Board of Directors. He further reasoned that because UAI Board approval had not been obtained, there had been no "meeting of the minds" with respect to the settlement. Appendix ("App.") 417a.

Fishman subsequently retained successor counsel to proceed with the arbitration. With the assistance of successor counsel, Fishman and UAI ultimately reached a settlement agreement, whose terms were apparently less favorable than those Epstein had negotiated with UAI.

Fishman brought suit for professional negligence against Epstein and Spector Gadon and breach of contract against Epstein alone. Epstein and Spector Gadon moved

3

for judgment on the pleadings, denying the allegations of malpractice and arguing that Fishman failed to state a plausible claim for relief.  After considering the arbitrator's opinion, the District Court granted judgment on the pleadings in favor of Epstein and Spector Gadon.  The District Court subsequently denied Fishman's motion for reconsideration.

Fishman brought this timely appeal.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291.  Our review of the District Court's dismissal under Rule 12(c) is plenary.  Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008).  "In reviewing the grant of a Rule 12(c) motion, we must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  Id. (citing Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290–91 (3d Cir.1988)).

## III.

On appeal, Fishman argues that the District Court erred by considering the arbitrator's opinion in rendering judgment.  Fishman also argues that the District Court erred by concluding that Fishman failed to state viable claims of professional negligence and breach of contract.  We have considered Fishman's arguments, and for the following reasons, we will affirm the District Court's determination.

Fishman first argues that the District Court erred by:  1) refusing to strike the arbitrator's opinion, and 2) failing to convert the motion for judgment on the pleadings

4

into one for summary judgment. We do not agree. Fishman explicitly relied on the arbitrator's opinion in his complaint. App. 36a ¶ 27. Indeed, Judge Melinson's denial of the motion to enforce settlement was integral to Fishman's malpractice claim. Fishman thus invited consideration of the arbitrator's opinion on a Rule 12(c) motion. See Mele v. Fed. Reserve Bank of New York, 359 F.3d 251, 256 n.5 (3d Cir. 2004), as amended (Mar. 8, 2004) (noting that, in the context of ruling on a Rule 12(c) motion, a district court may rely on any "'document integral to or explicitly relied upon in the complaint' . . . 'without converting the motion [to dismiss into one for summary judgment].'" (quoting In re Burlington Coat Factory Sec. Lit., 114 F.3d 1410, 1426 (3d Cir. 1997))). Accordingly, the District Court was entitled to consider the arbitrator's opinion.

We also agree with the District Court that Fishman failed to state a cognizable claim for professional negligence. Under Pennsylvania law, the elements of a legal malpractice claim are: "(1) the employment of the attorney or other basis for a duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of damage to the plaintiff." Knopick v. Connelly, 639 F.3d 600, 605 n.7 (3d Cir. 2011) (citing Bailey v. Tucker, 621 A.2d 108, 112 (Pa. 1993)). Fishman's complaint alleged several bases for Epstein's purported malpractice, including, inter alia, that Epstein failed to: (1) memorialize the negotiated settlement or put its terms on the record; (2) control the drafting of the settlement agreement; (3) seek UAI Board approval for the settlement or inform Fishman that such approval was required; and (4) produce Fishman for deposition in favor of UAI's position in the Keane

5

litigation. These allegations do not plausibly suggest that Epstein failed to exercise the ordinary skill and knowledge required of attorneys under similar circumstances.

The District Court correctly concluded that Fishman has not pleaded that any alleged malpractice on Epstein's part prevented Fishman from achieving a binding settlement with UAI. As discussed, UAI maintained a contract approval policy that required UAI Board approval before the adoption of any settlement exceeding $500,000. The existence of this policy meant that any actions or omissions on Epstein's part, such as failing to memorialize the terms of the July 17, 2009 settlement discussions, did not prevent the realization of a binding settlement. Nor did Epstein act negligently or in a dilatory fashion in permitting UAI to draft the initial agreement. Rather, Epstein participated in several discussions with UAI over the course of several months and "made repeated inquiries, by phone and email, as to the status of the written agreement." App. 412a. Finally, Epstein's purported failure to produce Fishman for deposition in the Keane case does not amount to malpractice because, as the District Court observed, Epstein could not have manipulated the progress of a litigation over which he lacked control. In these circumstances, we conclude that Fishman failed to state a cognizable malpractice claim.

The District Court also correctly determined that Fishman's alleged damages were too remote to support a malpractice claim. "An essential element to [a legal malpractice] cause of action is proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm." Kituskie v. Corbman, 714 A.2d 1027, 1030 (Pa. 1998); see also Rizzo v. Haines, 555 A.2d 58, 68

6

(Pa. 1989) ("[I]n order for one to prevail on a claim of legal malpractice, one must establish that the party against whom the initial claim was asserted . . . would have reached agreement upon a settlement in an ascertainable amount."). Here, Fishman's purported damages were based on a settlement that was never concluded. Fishman therefore did not plead that he would have reached a settlement with an ascertainable value. Fishman's purported harm was thus entirely too speculative to support a viable claim.

Finally, we perceive no error with the District Court's determination that Fishman failed to state a viable breach of contract claim. The breach of contract claim was premised on the same conduct underlying the malpractice claim. Because the alleged facts do not plausibly suggest professional negligence, they similarly do not make out a breach of a contractual duty.

IV.

For the foregoing reasons, we will affirm the District Court's orders granting judgment on the pleadings and denying the motion to reconsider.

7